

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CARLEENA WAITS, ON BEHALF
OF THE WRONGFUL DEATH BENEFICIARY
OF AARON M. GRIFFIN, DECEASED                                  PLAINTIFF

VS.                                                 CAUSE NO. 3:24-cv-706-CWR-LGI

HINDS COUNTY, MISSISSIPPI;
QCHC OF MISSISSIPPI, LLC;
AND JANE/JOHN DOES 1-5, INDIVIDUALLY
AND IN THEIR OFFICIAL CAPACITIES                               DEFENDANTS

## COMPLAINT

COMES NOW Carleena Waits, on behalf of the wrongful death beneficiary of Aaron M. Griffin, deceased, by and through undersigned counsel, and files this Complaint against Hinds County, Mississippi; QCHC of Mississippi, Inc.; and Jane/John Does 1-5, Individually and in their Official Capacities, and for grounds would show unto this Honorable Court the following, to-wit:

### PARTIES

1.  Plaintiff Carleena Waits, an adult resident citizen of Cobb County, Georgia, brings this action on behalf of the heir and wrongful death beneficiary of Aaron M. Griffin, deceased.

2.  Defendant Hinds County, Mississippi was and still is a county organized and existing under and by virtue of the laws of the State of Mississippi. This defendant may be served with process of this Court in care of its agent for service, Robert Graham, President, Hinds County Board of Supervisors, Hinds County Chancery Court Building, 316 South President Street, Jackson, Mississippi.

1

3. Defendant QCHC of Mississippi, LLC, also known as Quality Correctional Health Care and/or QCHC of America, Inc., was and still is an Alabama limited liability corporation licensed and qualified to do business in the State of Mississippi. This defendant may be served with process of this Court in care of its agent for service, InCorp Services, Inc., 302 Enterprise Drive, Suite A, Oxford, Mississippi.

4. Defendants Jane/John Doe 1-5, to the best of plaintiff's knowledge, information and belief were, at all times material hereto, either deputy sheriffs, detention officers, investigators, staff members, personnel, physicians, specialists, agents, employees, vendors, or other medical professionals of Hinds County and/or QCHC of Mississippi, LLC and acting within the course and scope of their employment as said deputy sheriffs, detention officers, investigators, staff members, personnel, physicians, specialists, agents, employees, vendors, or other medical professionals. The true, correct and/or complete names of these defendants, stated fictitiously in this pleading, are unknown to the plaintiff at this time. When the true, correct and complete names of these defendants are ascertained, plaintiff will ask this Court for permission to amend and insert their true, correct and complete names to affect service of process on each said defendant.

## JURISDICTION AND VENUE

5. Plaintiff asserts claims and causes of action under the United States Constitution, particularly, the Fifth, Eighth, and Fourteenth Amendments thereto.

6. Plaintiff asserts claims and causes of action under all federal laws, statutes and regulations, particularly, Title 42, United States Code §1983.

7. Therefore, this Court has original jurisdiction over the parties and subject matter pursuant to Title 28, United States Code §1331.

8. Venue is proper before this Court, particularly, the Southern District of Mississippi, Northern Division, since all or part of the violative and tortious acts and/or omissions of the defendants occurred in this jurisdiction and division.

## NOTICE

9. Plaintiff adopts and incorporates by reference each and every allegation as set forth above.

10. On or about May 16, 2024, plaintiff, in conformity with §11-46-11, Miss Code of 1972, Annotated, presented a written Notice of Claim to the defendant Hinds County. A copy of the Notice of Claim is attached hereto and labeled Exhibit "A" and incorporated herein by this reference.

11. The defendant Hinds County has not responded to the Notice of Claim.

## FACTS

12. Plaintiff adopts and incorporates by reference each and every allegation as set forth above.

13. Griffin was detained at the Hinds County Detention Center (HCDC) early-evening June 4, 2023.

14. Shortly after his detention, Griffin notified the HCDC he was a dialysis patient, had a previously scheduled dialysis treatment, and the prescription medications needed for his medical condition.

15. Griffin dialyzed June 2, 2023, and he was scheduled for a dialysis session June 5, 2023, at 6:45 a.m.

16. Griffin dialyzed three times weekly, Monday/Wednesday/Friday, at DaVita Jackson South, Jackson Mississippi.

17. Beginning in the early morning hours and continuing throughout the day June 5, 2023, Griffin vomited, complained of chest pain, and told the HCDC deputies and other personnel of his medical condition.

18. At all times material hereto, Hinds County had a contractual agreement (the Agreement) with QCHC of Mississippi, Inc. (QCHC) to provide professional and responsive physician and related healthcare services to the HCDC detainees.

19. Per the Agreement, QCHC was to provide specialty medical services, including, but not limited to, board certified physicians in nephrology, to the HCDC detainees.

20. Griffin was transported from the HCDC to Merit Health-Central Hospital (Merit Health) June 5, 2023, at approximately 7:00 p.m.

21. Griffin died June 7, 2023, of cardiac failure at Merit Health.

## CAUSES OF ACTION

### *Section 1983*

22. Plaintiff adopts and incorporates by reference each and every allegation as set forth above.

23. Section 1983 of the Civil Rights Act of 1964 (Section 1983) forbids, *inter alia,* the deprivation of any rights, privileges or immunities secured by the Constitution and laws.

24. Section 1983 is applicable to plaintiff's deceased as a HCDC detainee June 4 and 5, 2023.

25. Plaintiff submits the deceased was deprived of his Constitutional rights under Section 1983 when defendant Hinds County deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees, acting under color of law, delayed the administration of medical care and attention to Griffin.

26. Plaintiff submits the deceased was deprived of his constitutional rights under Section 1983 when defendant Hinds County deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees, acting under color of law, delayed Griffin's access to the necessary medical care and attention.

27. Plaintiff submits the deceased was deprived of his constitutional rights under Section 1983 when defendant Hinds County deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees, acting under color of law, denied the administration of medical care and attention to Griffin.

28. Plaintiff submits the deceased was deprived of his constitutional rights under Section 1983 when defendant Hinds County deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees, acting under color of law, denied Griffin's access to the necessary medical care and attention.

29. Plaintiff submits the deceased was deprived of his constitutional rights under Section 1983 when defendant Hinds County deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees, acting under color of law, provided grossly inadequate medical care and attention to Griffin.

30. Plaintiff submits the deceased was deprived of his constitutional rights under Section 1983 when defendant Hinds County deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees, acting under color of law, did not ensure that Griffin receive the necessary medical care and attention.

31. Plaintiff submits the deceased was deprived of his constitutional rights under Section 1983 when Hinds County deputy sheriffs, detention officers, investigators, staff

members, personnel, agents, and employees, acting under color of law, exhibited a deliberate indifference to Griffin's need for medical care and attention.

32. Plaintiff submits the deceased was deprived of his constitutional rights under Section 1983 when defendant Hinds County deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees, acting under color of law, did not take reasonable measures to guarantee Griffin's health and safety.

33. Plaintiff submits the deceased was deprived of his constitutional rights under Section 1983 when defendant Hinds County deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees, acting under color of law, exposed Griffin to a risk of harm that resulted in his death.

### *Negligence*

#### *1. Deputy Sheriffs and Other HCDC Personnel*

34. Plaintiff adopts and incorporates by reference each and every allegation as set forth above.

35. The defendant deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees owed a duty to use reasonable and ordinary care not to delay the administration of medical care and attention to the deceased under the circumstances that existed on June 5, 2023.

36. The defendant deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees owed a duty to use reasonable and ordinary care not to delay the deceased's access to the necessary medical care and attention under the circumstances that existed on June 5, 2023.

37.     The defendant deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees owed a duty to use reasonable and ordinary care not to deny the administration of medical care and attention to the deceased under the circumstances that existed on June 5, 2023.

38.     The defendant deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees owed a duty to use reasonable and ordinary care not to deny the deceased's access to the necessary medical care and attention under the circumstances that existed on June 5, 2023.

39.     The defendant deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees owed a duty to use reasonable and ordinary care to provide adequate medical care and attention to the deceased under the circumstances that existed on June 5, 2023.

40.     The defendant deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees owed a duty to use reasonable and ordinary care to ensure that the deceased receive the necessary medical care and attention under the circumstances that existed on June 5, 2023.

41.     The defendant deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees owed a duty to use reasonable and ordinary care not to exhibit a deliberate indifference to the deceased's need for medical care and attention under the circumstances that existed on June 5, 2023.

42.     The defendant deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees owed a duty to use reasonable and ordinary care to take

reasonable measures to guarantee the deceased's health and safety under the circumstances that existed on June 5, 2023.

43. The defendant deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees owed a duty to use reasonable and ordinary care not to expose the deceased to a risk of harm that resulted in his death.

44. The defendant deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees owed a duty to use reasonable and ordinary care not to violate and deprive the deceased of his constitutional and statutory rights under the circumstances that existed on June 5, 2023.

45. The defendant Hinds County deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees knew, or in the exercise of reasonable care should have known, not to delay the administration of medical care and attention to the deceased under the circumstances that existed on June 5, 2023.

46. The defendant Hinds County deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees knew, or in the exercise of reasonable care should have known, not to delay the deceased's access to the necessary medical care and attention under the circumstances that existed on June 5, 2023.

47. The defendant Hinds County deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees knew, or in the exercise of reasonable care should have known, not to deny the administration of medical care and attention to the deceased under the circumstances that existed on June 5, 2023.

48. The defendant Hinds County deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees knew, or in the exercise of reasonable care

should have known, not to deny the deceased's access to the necessary medical care and attention under the circumstances that existed on June 5, 2023.

49. The defendant Hinds County deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees knew, or in the exercise of reasonable care should have known, not to provide grossly inadequate medical care and attention to the deceased under the circumstances that existed on June 5, 2023.

50. The defendant Hinds County deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees knew, or in the exercise of reasonable care should have known, to ensure the deceased receive the necessary medical care and attention under the circumstances that existed on June 5, 2023.

51. The defendant Hinds County deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees knew, or in the exercise of reasonable care should have known, not to exhibit a deliberate indifference to the deceased's need for medical care and attention under the circumstances that existed on June 5, 2023.

52. The defendant Hinds County deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees knew, or in the exercise of reasonable care should have known, to take reasonable measures to guarantee the deceased's health and safety under the circumstances that existed on June 5, 2023.

53. The defendant Hinds County deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees, knew, or in the exercise of reasonable care should have known, not to expose the deceased to a risk of harm that resulted in his death under the circumstances that existed on June 5, 2023.

54. The defendant Hinds County deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees knew, or in the exercise of reasonable care should have known, not to violate and deprive the deceased of his constitutional and statutory rights under the circumstances that existed on June 5, 2023.

55. The defendant Hinds County deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees, breached each and every one of the duties owed the deceased, and this breach constituted negligence.

### 2. QCHC

56. Plaintiff adopts and incorporates by reference each and every allegation as set forth above.

57. QCHC, in providing professional and responsive physician and related healthcare and specialty services, by and though its physicians, specialists, agents, employees, vendors, and other medical professionals, owed a duty to use reasonable and ordinary care to assess the condition the deceased's condition and to assist in the management of his medical condition under the circumstances that existed on June 5, 2023.

58. QCHC, in providing professional and responsive physician and related healthcare and specialty services, by and though its physicians, specialists, agents, employees, vendors, and other medical professionals, owed a duty to use reasonable and ordinary care to protect the deceased and his medical condition under the circumstances that existed on June 5, 2023.

59. QCHC, in providing professional and responsive physician and related healthcare and specialty services, by and though its physicians, specialists, agents, employees, vendors, and other medical professionals, owed a duty to use reasonable and ordinary care to provide the

necessary medical care and attention to the deceased under the circumstances that existed on June 5, 2023.

60. QCHC, in providing professional and responsive physician and related healthcare and specialty services, by and though its physicians, specialists, agents, employees, vendors, and other medical professionals, owed a duty to use reasonable and ordinary care to arrange for and/or provide nephrology services to the deceased under the circumstances that existed on June 5, 2023.

61. QCHC, in providing professional and responsive physician and related healthcare and specialty services, by and though its physicians, specialists, agents, employees, vendors, and other medical professionals, owed a duty to use reasonable and ordinary care to arrange for and/or provide inpatient and/or outpatient hospital services to the deceased under the circumstances that existed on June 5, 2023.

62. QCHC, in providing professional and responsive physician and related healthcare and specialty services, by and though its physicians, specialists, agents, employees, vendors, and other medical professionals, owed a duty to use reasonable and ordinary care to arrange for and/or provide mobile services to the deceased under the circumstances that existed on June 5, 2023.

63. QCHC, in providing professional and responsive physician and related healthcare and specialty services, by and though its physicians, specialists, agents, employees, vendors, and other medical professionals, owed a duty to use reasonable and ordinary care to establish a plan for the identification of the deceased's medical condition and special healthcare needs on June 5, 2023.

64. QCHC, in providing professional and responsive physician and related healthcare and specialty services, by and though its physicians, specialists, agents, employees, vendors, and other medical professionals, owed a duty to use reasonable and ordinary care to establish a plan for the treatment of the deceased's medical condition and special healthcare needs on June 5, 2023.

65. QCHC, in providing professional and responsive physician and related healthcare and specialty services, by and though its physicians, specialists, agents, employees, vendors, and other medical professionals, owed a duty to use reasonable and ordinary care to establish a plan for the monitoring of the deceased's medical condition and special healthcare needs on June 5, 2023.

66. QCHC, in providing professional and responsive physician and related healthcare and specialty services, by and though its physicians, specialists, agents, employees, vendors, and other medical professionals, owed a duty to use reasonable and ordinary care to ensure the deceased a chance of survival under the circumstances that existed on June 5, 2023.

67. QCHC, in providing professional and responsive physician and related healthcare and specialty services, by and though its physicians, specialists, agents, employees, vendors, and other medical professionals, owed a duty to use reasonable and ordinary care not to violate its contractual and statutory duties to the deceased under the circumstances that existed on June 5, 2023.

68. QCHC, in providing professional and responsive physician and related healthcare and specialty services, by and though its physicians, specialists, agents, employees, vendors, and other medical professionals, knew, or in the exercise of reasonable care should have known, to

assess the deceased's condition and to assist in the management of his medical condition under the circumstances that existed on June 5, 2023.

69. QCHC, in providing professional and responsive physician and related healthcare and specialty services, by and though its physicians, specialists, agents, employees, vendors, and other medical professionals, knew, or in the exercise of reasonable care should have known, to protect the deceased and his medical condition under the circumstances that existed on June 5, 2023.

70. QCHC, in providing professional and responsive physician and related healthcare and specialty services, by and though its physicians, specialists, agents, employees, vendors, and other medical professionals, knew, or in the exercise of reasonable care should have known, to provide the necessary medical care and attention to the deceased under the circumstances that existed on June 5, 2023.

71. QCHC, in providing professional and responsive physician and related healthcare and specialty services, by and though its physicians, specialists, agents, employees, vendors, and other medical professionals, knew, or in the exercise of reasonable care should have known, to arrange for and/or provide nephrology services to the deceased under the circumstances that existed on June 5, 2023.

72. QCHC, in providing professional and responsive physician and related healthcare and specialty services, by and though its physicians, specialists, agents, employees, vendors, and other medical professionals, knew, or in the exercise of reasonable care should have known, to arrange for and/or provide inpatient and/or outpatient hospital services to the deceased under the circumstances that existed on June 5, 2023.

73. QCHC, in providing professional and responsive physician and related healthcare and specialty services, by and though its physicians, specialists, agents, employees, vendors, and other medical professionals, knew, or in the exercise of reasonable care should have known, to arrange for and/or provide mobile services to the deceased under the circumstances that existed on June 5, 2023.

74. QCHC, in providing professional and responsive physician and related healthcare and specialty services, by and though its physicians, specialists, agents, employees, vendors, and other medical professionals, knew, or in the exercise of reasonable care should have known, to establish a plan for the identification of the deceased's medical condition and special healthcare needs on June 5, 2023.

75. QCHC, in providing professional and responsive physician and related healthcare and specialty services, by and though its physicians, specialists, agents, employees, vendors, and other medical professionals, knew, or in the exercise of reasonable care should have known, to establish a plan for the treatment of the deceased's medical condition and special healthcare needs on June 5, 2023.

76. QCHC, in providing professional and responsive physician and related healthcare and specialty services, by and though its physicians, specialists, agents, employees, vendors, and other medical professionals, knew, or in the exercise of reasonable care should have known, to establish a plan for the monitoring of the deceased's medical condition and special healthcare needs on June 5, 2023.

77. QCHC, in providing professional and responsive physician and related healthcare and specialty services, by and though its physicians, specialists, agents, employees, vendors, and

other medical professionals, knew, or in the exercise of reasonable care should have known, to ensure the deceased a chance of survival under the circumstances that existed on June 5, 2023.

78. QCHC, in providing professional and responsive physician and related healthcare and specialty services, by and though its physicians, specialists, agents, employees, vendors, and other medical professionals, knew, or in the exercise of reasonable care should have known, not to violate its contractual and statutory duties to the deceased under the circumstances that existed on June 5, 2023.

79. The defendant QCHC physicians, specialists, agents, employees, vendors, and other medical professionals breached each and every one of the duties owed the deceased, and this breach constituted negligence.

### *Gross Negligence*

80. Plaintiff adopts and incorporates by reference each and every allegation as set forth above.

81. Hinds County's failure, by and through its deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees, to exercise reasonable and ordinary care under the circumstances that existed with the deceased on June 5, 2023 was negligence.

82. Hinds County's failure to exercise reasonable and ordinary care in the screening, training, hiring, retaining, assigning, and supervising of these defendant deputy sheriffs, detention officers, investigators, staff members, personnel, agents, and employees, was negligence.

83. QCHC's failure, by and through its physicians, specialists, agents, employees, vendors, and other medical professionals, to exercise reasonable and ordinary care under the circumstances that existed with the deceased on June 5, 2023 was negligence.

84. QCHC's failure to exercise reasonable and ordinary care in the screening, training, hiring, retaining, assigning, and supervising these defendant physicians, specialists, agents, employees, vendors, and other medical professionals was negligence, was negligence.

85. These negligent acts and omissions constituted gross negligence and were a willful, wanton, reckless, and indifferent disregard for the deceased's health and life.

### *Intentional Infliction of Emotional Distress*

86. Plaintiff adopts and incorporates by reference each and every allegation as set forth above.

87. The actions of each of these defendants, whether conspired individually, in concert, or under the color of law, on June 5, 2023 were intentional and/or reckless as they related to the administration of the necessary medical care and attention to the deceased.

88. The actions of each of these defendants, whether conspired individually, in concert, or under the color of law, on June 5, 2023 were so outrageous and to such an extreme degree as to be considered beyond all bounds of decency as they related to the administration of the necessary medical care and attention to the deceased.

89. The actions of each of these defendants, whether conspired individually, in concert, or under the color of law, on June 5, 2023 were atrocious and intolerable in a civilized society as they related to the administration of the necessary medical care and attention to the deceased.

90. The actions of each of these defendants, whether conspired individually, in concert, or under the color of law, on June 5, 2023 caused severe emotional distress to the deceased, his heirs and wrongful death beneficiaries.

## DAMAGES

91. Plaintiff adopts and incorporates by reference each and every allegation as set forth above.

92. As a direct and proximate result of the actions of each of these defendants, including negligence and breach of the duties owed the deceased, whether conspired individually, in concert, or under the color of law, his constitutional, contractual, and statutory rights were violated, and this resulted in his death.

93. As a direct and proximate result of the actions of each of these defendants, including negligence and breach of the duties owed the deceased, whether conspired individually, in concert, or under the color of law, the deceased's family was caused to incur medical, funeral, burial and related expenses, and to suffer the loss of the minor child's father and the enjoyment of his life.

94. As a direct and proximate result of the actions of each of these defendants, including negligence and breach of the duties owed the deceased, whether conspired individually, in concert, or under the color of law, plaintiff's minor child is entitled to certain legal and equitable relief.

### *Compensatory Damages*

95. Plaintiff adopts and incorporates by reference each and every allegation as set forth above.

96. Plaintiff's minor is entitled to recover damages, including, but not limited to, pain and suffering, medical, funeral, burial and related expenses, mental anguish, emotional distress, loss of the minor's father and enjoyment of his life, and all other damages to which he may be entitled as the victim of the actions of each of these defendants, whether conspired individually, in concert, or under the color of law.

### *Punitive Damages*

97. Plaintiff adopts and incorporates by reference each and every allegation as set forth above.

98. Plaintiff is entitled to punitive damages for the intentional denial, violation, and deprivation of the constitutional, contractual, and statutory rights of the deceased by these defendants, whether conspired individually, in concert, or under the color of law, regarding the administration of necessary medical care and attention on June 5, 2023.

99. The intentional denial, violation, and deprivation of the constitutional, contractual, and statutory rights of the deceased by these defendants, whether conspired individually, in concert, or under the color of law, were a reckless disregard of and deliberate indifference to the deceased's federal and state protected rights.

### *Declaratory and Injunctive Relief*

100. Plaintiff adopts and incorporates by reference each and every allegation as set forth above.

101. Plaintiff seeks relief declaring that each of these defendants engaged in an unlawful and intentional denial, violation, and deprivation of the constitutional, contractual, and statutory rights of the deceased.

102. Plaintiff further seeks relief enjoining each of these defendants from engaging in any future acts or practices that constitute an unlawful and intentional denial, violation, and deprivation of the constitutional and statutory rights of other Hinds County detainees and/or QCHC patients.

### *Attorney's Fees*

103. Plaintiff adopts and incorporates by reference each and every allegation as set forth above.

104. Plaintiff seeks an award of attorney's fees and all costs and related expenses of this civil suit.

WHEREFORE PREMISES CONSIDERED, Plaintiff brings this action and demands judgment against these defendants, joint and severally, for compensatory damages in the amount of Five Hundred Thousand Dollars ($500,000); punitive damages in the amount of Five Hundred Thousand Dollars ($500,000); declaratory and injunctive relief; and any and all other amounts deemed appropriate that will compensate plaintiff's minor son for the denial, violation, and deprivation of the deceased's constitutional, contractual, and statutory rights as a result of the defendants' actions, whether conspired individually, in concert, or under the color of law. Plaintiff also prays for attorney's fees pursuant to Title 42 United States Code §1988, plus interest and all costs and expenses of suit accordingly, which shall be determined by the Court and jury at trial. Plaintiff further prays for such other and further relief as may be deemed just and proper under the circumstances.

RESPECTFULLY SUBMITTED, this the 7th day of November, 2024.

_____
MID-TOWN LAW OFFICE, P.A.
POST OFFICE BOX 74
TOUGALOO, MISSISSIPPI 39174
(601) 354-2594
RHONDA C. COOPER
MSB NO. 6511
rcooper@midtownlawoffice.com
ATTORNEY FOR CARLEENA WAITS